**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GULZAR SINGH,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,*

*Respondent.*

Nos. 03-72197
03-74613

Agency No.
A76-458-043

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 15, 2005—San Francisco, California

Filed June 24, 2005

Before: Donald P. Lay,** Betty B. Fletcher, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Lay

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States, pursuant to Fed. R. App. P.
43(c)(2).

**The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

Martin Resendez Guajardo, Law Office of Martin Resendez Guajardo, San Francisco, California, for the petitioner.

Andrew C. MacLachlan, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent.

**OPINION**

LAY, Circuit Judge:

Petitioner Gulzar Singh seeks review of two orders issued by the Board of Immigration Appeals ("Board"). The first order was issued May 6, 2003, and it affirmed an Immigration Judge's ("IJ") denial of Singh's motion to reopen removal proceedings and rescind a removal order which was entered against Singh *in absentia*. The second Board order issued on December 8, 2003. This granted Singh's motion for reconsid-

eration of the first decision, but then again denied Singh's request to reopen removal proceedings. We reverse and remand this matter to the Board, with further orders to remand this matter to the IJ and to allow Singh to reopen removal proceedings.

Mr. Singh is a native and citizen of India who entered the U.S. on May 8, 1997, pursuant to a non-immigrant visitor visa. Singh remained in the U.S. past the authorized period of time and filed an application for asylum with the former Immigration and Naturalization Service ("INS" or "Service").

A few months later, on March 30, 1998, Singh wrote a letter to the asylum office in San Francisco withdrawing his asylum application. The letter stated, "I now wish to withdraw my Political Asylum claim. I believe that I should try to reside in a different city in my home country." Singh did not state when he intended to depart the U.S., nor did he provide a forwarding address. The asylum office mailed a notice to Singh's address of record on April 16, 1998, confirming termination of his asylum application. Singh then departed the U.S. on May 1, 1998, and returned to India. The asylum office was never notified of his departure.

Over two months after Singh's departure, on July 23, 1998, the asylum office served a notice to appear ("NTA") upon Singh by certified mail (return receipt requested) to his last known address in the U.S. The NTA alleged that Singh was removable as an alien who remained in the country longer than permitted under the terms of his visa. He was ordered to appear at a hearing before an IJ on October 21, 1998.[1] When Singh did not appear, the IJ ordered him removed *in absentia*.

---

[1]At oral argument, Singh claimed he never received the NTA. The Government responded that the NTA was successfully delivered to Singh's former address, that someone signed for it, and that even if Singh was not at the address on that day, there is no evidence that he failed to receive this NTA. The Government seems to imply that someone at the address told Singh about the NTA, or gave it to him, but no evidence supports this allegation. Notably, the Government did not submit into evidence the return receipt for the certified mailing.

Singh re-entered the U.S. as a non-immigrant visitor on March 6, 1999. Over three years later, on March 12, 2002, Singh filed a motion to reopen removal proceedings and to rescind the *in absentia* removal order. Singh alleged that he was not present in the U.S. when the hearing occurred because he had already returned to India. The IJ denied Singh's motion, finding that notice was properly provided to Singh at the only address he had ever provided to the Immigration Court. Thus, Singh could not reopen for lack of proper notice, and at any rate, his motion was time-barred. Singh appealed. The Board affirmed the IJ's decision without opinion on May 6, 2003. Singh filed a timely petition for review of the Board's decision.

On June 3, 2003, Singh also filed a motion with the Board for reconsideration of its May 6, 2003, decision. This time, Singh argued that the IJ lacked jurisdiction to hold the October 21, 1998, hearing and to enter the removal order *in absentia*. Singh pointed out that he left the U.S. on May 1, 1998, prior to the time jurisdiction vested with the IJ (i.e., before the NTA was filed with the Immigration Court on August 27, 1998).[2]

The Board agreed to reconsider its decision on the motion to reopen because Singh "correctly argue[d] that neither the Immigration Judge nor this Board had jurisdiction to adjudicate his March 12, 2002, motion to reopen."[3] The Board cited the rule that "[a] motion to reopen shall not be made by or on behalf of a person who is the subject of . . . removal proceed-

---

[2]Jurisdiction vests, and removal proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. *See Cortez-Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir. 2001).

[3]Note that this recapitulation of Singh's argument is somewhat incorrect. Singh did not argue that the IJ and the BIA lacked jurisdiction to adjudicate his March 12, 2002 motion to reopen. He argued that the IJ lacked jurisdiction to conduct the original October 21, 1998 removal hearing and to enter the removal order *in absentia*.

ings subsequent to his departure from the United States. *See* 8 C.F. R. § 1003.2(d)." Since Singh's motion to reopen was filed after he departed the U.S., the Board reasoned that it never should have considered Singh's motion to reopen. The Board vacated its May 6, 2003 decision affirming the IJ's decision without opinion.

Next, the Board addressed whether the IJ lacked jurisdiction to enter the removal order *in absentia* on October 21, 1998. The Board concluded the NTA was properly effected through delivery to Singh's last known address by certified mail; because this mailing was not returned, Singh must have received the NTA. The Board also found there was no evidence of Singh's departure date from the U.S., such as airline tickets.[4] It concluded that the October 21, 1998, removal order *in absentia* was properly entered. The original *in absentia* removal order was deemed "final to the same extent as though no motion to reopen had [ever] been filed." Singh filed a timely petition to review this (second) decision of the Board. Both petitions have been consolidated.

Denials of motions to reopen are reviewed for an abuse of discretion. *See Salta v. INS*, 314 F.3d 1076, 1078 (9th Cir. 2002). The Board's determination of a purely legal question is reviewed de novo. *See Socop-Gonzales v. INS,* 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc). Where the Board's interpretation of a statute is clearly erroneous or inconsistent with the plain meaning of the statute, deference to the BIA's interpretation is not warranted. *Id.*

---

[4]On the contrary, Singh's passport corroborates his claim that he departed on May 1, 1998, as it bears a stamp indicating that Singh entered Delhi on May 2, 1998. This evidence was in the record before the IJ and Board, yet the Board's decision fails to explain why this evidence constitutes insufficient corroboration of Singh's departure from the U.S.

## I. The Board's Jurisdiction to Consider Singh's Motion to Reopen Removal Proceedings

**[1]** The Board vacated its May 6, 2003, decision without opinion based on lack of jurisdiction pursuant to 8 C.F.R. § 1003.2(d). That regulation states:

> (d) Departure, deportation, or removal. A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

The Board interpreted this regulation to mean that any time a petitioner files a motion to reopen after departing the country, the motion is barred. The Board's interpretation forgets a fundamental premise: the scope of this regulation is clearly limited to persons who depart the U.S. *after removal proceedings* have already commenced against them. Removal proceedings would have to commence before a motion to reopen or reconsider is procedurally possible. Thus, the plain language of this regulation is limited to persons who depart the U.S. *after* removal proceedings have already commenced against them. The regulation does not encompass the novel factual situation presented here — i.e., a petitioner who *first* departs the U.S., then becomes the subject of removal proceedings, returns, and files a motion to reopen.

**[2]** The Board's interpretation of this regulation also conflicts with established law. Under the Board's reading of the regulation in this case, the clause "who is the subject of . . . removal proceedings" modifies the phrase "subsequent to his

or her departure." However, the well-settled interpretation of this regulation is that the clause "who is the subject of . . . removal proceedings" modifies the term "person." The sentence as a whole is taken to mean that a person who leaves the U.S. *after removal proceedings have already been initiated* is barred from filing a motion to reopen.[5] The clause "who is the subject of . . . removal proceedings" cannot modify two things at the same time, thus the Board's interpretation of 8 C.F.R. § 1003.2(d) was clearly erroneous. Mr. Singh was not the "subject of . . . removal proceedings" at the time he left the U.S., so § 1003.2(d) did not operate to remove the Board's jurisdiction to consider Singh's motion to reopen.

In light of the Board's incorrect basis for vacating its May 6, 2003, order, we reject the Board's conclusion that the original *in absentia* removal order should be deemed "final to the same extent as though no motion to reopen had [ever] been filed." Singh appealed the denial of his motion to reopen, and that appeal is before this court.

## II. The IJ's Denial of Singh's Motion to Reopen

[3] We also conclude that the IJ's denial of Singh's motion to reopen was an abuse of discretion.[6] Under 8 U.S.C. § 1229a(b)(5)(C)(ii), a removal order may be rescinded "upon a motion to reopen . . . if the alien demonstrates that [he] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)," which provides that the alien must be served with an NTA.[7] Singh maintains that he left the U.S. on May

---

[5]*See, e.g., Azarte v. Ashcroft*, 394 F.3d 1278, 1281-82 (9th Cir. 2005) (noting that an alien who departs after being granted relief from removal in the form of voluntary departure forfeits the right to a motion to reopen).

[6]Since the Board affirmed the IJ's recommendation on this issue without opinion, we review the IJ's decision as the final agency decision. *See Sidhu v. Ashcroft*, 368 F.3d 1160, 1163 (9th Cir. 2004).

[7]The IJ also erred by holding, in the alternative, that Singh's motion to reopen was time-barred, because a motion to reopen based on lack of notice may be "filed *at any time*." 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added).

1, 1998, and his passport corroborates this. The Service did not send the NTA to Singh until July 23, 1998. Because Singh provided evidence that he was no longer in the U.S. when the NTA was mailed to his former address, he established that he did not receive notice in accordance with § 1229(a), and the denial of his motion to reopen was an abuse of discretion.

**[4]** The Government argues it was Singh's own fault that he did not receive the NTA because he failed to provide the INS with his change of address, as required under 8 U.S.C. § 1305(a). However, § 1305(a) states, "[e]ach alien required to be registered under this subchapter *who is within the United States* shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change . . . ." *Id*. (emphasis added). The plain language of that statute indicates the address requirement applies only so long as the alien "is within the United States." Since Singh left the U.S. altogether in May 1998, § 1305(a) did not apply to him.

**[5]** Nor can the Government argue that Singh should have provided his change of address to the asylum office before he left the U.S. An alien is excused from failing to notify the INS of a change of address, and as a consequence, failing to appear for an initial removal proceeding, if the Service never actually provided the alien with written notice of the address notification requirement, which is what happened here. *See Lahmidi v. INS*, 149 F.3d 1011, 1017 (9th Cir. 1998). It is true that 8 U.S.C. § 1229a(b)(5)(B) waives the written NTA requirement under 8 U.S.C. § 1229(a) if the alien has "failed to provide the address required under section 1229(a)(1)(F)." However, 8 U.S.C. § 1229(a)(1)(F) is the provision that requires the Attorney General, *in the NTA*, to inform aliens of the address notification requirements and the consequences of failing to provide such notification to the INS. Because Singh never received the NTA, he never received the instructions on changing his address. Accordingly, 8 U.S.C. § 1229a(b)(5)(B) cannot excuse the Service's failure to provide Singh with

written notice of removal proceedings or defeat Singh's excuse for failing to appear.

[6] Accordingly, although the Service satisfied all of the jurisdictional requirements for Singh's removal proceedings, we conclude that Singh has demonstrated a failure to receive the NTA and any notice of the address notification requirements. Therefore, his motion to reopen should have been granted.

PETITION FOR REVIEW GRANTED and REMANDED to the Board, with direction to remand this matter to the IJ to reopen removal proceedings and to rescind the removal order.

**GRANTED AND REMANDED**.