In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2925

SUN HEE KO,

*Petitioner*,

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent*.

———————

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A75-880-560

———————

ARGUED JUNE 1, 2005 —DECIDED AUGUST 9, 2005[Œ]
OPINION PUBLISHED AUGUST 30, 2005

———————

Before MANION, WOOD, and SYKES, *Circuit Judges*.

PER CURIAM.   After learning that she had been ordered removed from the United States *in absentia*, Sun Hee Ko asked an immigration judge ("IJ") in Cincinnati to reopen her case. The IJ granted her motion, then transferred the case to Chicago, where Ko had moved. The IJ in Chicago, however, disagreed with the decision to reopen, so he

———————

[Œ] This appeal was originally decided by unpublished order of August 9, 2005. See Circuit Rule 53. The court has subsequently decided to issue the decision as an opinion.

reinstated the *in absentia* removal order. Ko now argues that it was error for the second IJ to reconsider the first IJ's decision to reopen her case.

Ko came from South Korea to Ohio in 1994 to study music. She took a full course-load until early 1997, when various pressures caused her to drop two courses, leaving her with only a part-time schedule. Unfortunately, this violated the terms of her F-1 student visa, which required her to attend classes full-time. She resumed full-time studies the next semester and tried to have her F-1 status reinstated, but she was unsuccessful.

When the government learned that Ko's visa was no longer valid, it sent her a notice to appear before the immigration court in Cincinnati. The notice was sent by certified mail to Ko's last known address: "1723 East Dorothy Lane" in Kettering, Ohio. Ko had moved from that address several months earlier, but a forwarding order was in effect so she received the notice anyway. This first notice did not include the date and time of Ko's hearing; that information was provided later in a second notice sent by regular mail, again to "1723 East Dorothy Lane." But Ko did not receive this second notice—it was returned to the immigration court marked "Attempted Not Known."

Ko's hearing was held on February 4, 1999. When Ko did not appear, Immigration Judge Robert Newberry entered an *in absentia* order of removal. A copy of the order was sent by regular mail to the Dorothy Lane address. Again the letter was returned to the court, this time with a sticker stating that the forwarding order had expired and identifying Ko's current address as "6520 Pine Cone Drive" in Dayton, Ohio.

Unaware of the removal order entered against her, Ko continued her studies and obtained her bachelor's degree in December 1999. She was admitted into a graduate music program, and in January 2000 again applied for reinstatement of her F-1 status. In her application, she stated that her earlier violation of the terms of her visa was inadvertent and that she "did not intend to violate any INS laws." She also explained that she had recently become engaged to a Korean-born U.S. citizen and that they planned to get married that summer. She expressed hope that reinstatement would allow her "to finish my graduate studies and to lawfully marry my fiancé." It is unclear from the record what ultimately became of this application.

Ko was married in July 2000 and moved to Illinois to live with her husband. She successfully applied for adjustment of status based on her marriage, and by November 2001 had applied for permanent residency. At some point, she learned of the *in absentia* order from February 1999. Accordingly, in December 2001 she filed a motion to reopen proceedings with the Cincinnati immigration court, asserting that although she received the initial Notice to Appear, she never received the following notice containing the date and time of the hearing. The government opposed the motion, arguing that Ko was not entitled to notice of the hearing because she did not provide the government with a current address, as she was required to do. Immigration Judge Newberry summarily granted the motion to reopen and, at Ko's request, transferred the case to the immigration court in Chicago.

The case was assigned to Immigration Judge Craig Zerbe. At the initial calendar hearing in May 2002, Judge Zerbe expressed some frustration with Judge Newberry's unexplained decision to reopen the case: "Let me just say, I

don't agree with that practice of reopening cases on a disputed motion without giving any explanation in a written decision. But, here you are, so, there's little I can do about it." He continued Ko's hearing to March 2003 to allow her to file a motion for adjustment of status.

On the day of the hearing, however, Judge Zerbe changed his mind. Rather than allow the parties to argue the merits of the adjustment motion, the judge devoted the hearing to explaining why he thought the motion to reopen should not have been granted in the first place. Noting that Judge Newberry did not explain his decision, he inferred that "the reason why the Judge didn't indicate anything is because he didn't have any justification." He concluded that the notice of the date and time of Ko's hearing was properly sent to her last known address, and that if Ko did not receive that notice it was her own fault for not notifying the immigration court that she had moved. In fact, the judge was convinced that this lack of notification was strategic—that Ko had deliberately avoided alerting the court to her whereabouts until after her marriage and the approval of her marriage visa, in what amounted to a "clear defrauding of the Immigration system." Ko asked for a continuance in order to respond to these assertions, but the IJ denied her request. Concluding that Judge Newberry's decision to reopen was "not worth any credit," Judge Zerbe reversed the reopening and reinstated Ko's order of removal.

The Board of Immigration Appeals upheld the reversal and reinstatement. Although it acknowledged that when a case is reassigned to a new judge, "the successor judge should generally not reexamine earlier rulings merely because he has a different view of the law or facts than the original judge," the Board concluded that reexamination was appropriate in this case because Judge Newberry did

not explain his decision to reopen, as the Board requires when a motion to reopen is opposed, *see Matter of Correa*, 19 I. & N. Dec. 130, 132–33 (BIA 1985). The Board also agreed with Judge Zerbe that reopening was improper because Ko "did not present a case that she was *prima facie* eligible for reopening."

The Board was incorrect, however, that Ko presented no basis for reopening her case. Reopening is permitted after entry of an *in absentia* removal order if the alien did not receive notice of the hearing. *See* Immigration and Nationality Act ("INA") § 240(b)(5)(C)(ii), 8 U.S.C. § 1229a(b)(5)(C)(ii); *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004). The record shows that the notice of Ko's hearing was returned to the court stamped "Attempted Not Known," demonstrating more or less conclusively that Ko did not receive it—a permissible basis for reopening, whether or not the notice was properly sent. *See Joshi*, 389 F.3d at 736.

If, on the other hand, Ko did not receive the notice because, as Judge Zerbe believed, she was deliberately hiding from immigration officials until after her marriage and the approval of her immigrant visa, she would not be entitled to the benefit of a reopening. *See Singh v. Gonzales*, 404 F.3d 1024, 1028–29 (7th Cir. 2005). But the record does not support that conclusion. Rather it shows that, far from waiting until after she became eligible for a marriage adjustment, Ko asked immigration officials to reinstate her F-1 status six months *before* her wedding. Judge Zerbe did not give Ko an opportunity to present such evidence—he gave no notice before the March 2003 hearing that he was planning to reconsider the reopening of the case, and he refused Ko's request for a continuance. Instead, his decision appears to be based only on unsupported speculation about

Ko's motives.

   As we explained in *Williams v. Commissioner*, 1 F.3d 502, 503 (7th Cir. 1993), "[l]itigants have a right to expect that a change in judges will not mean going back to square one." Although Judge Newberry should have explained his reasons for granting Ko's motion to reopen, his decision was not so baseless as to warrant a precipitous and unsupported reversal. That reversal was an abuse of discretion, and so we GRANT the petition for review, VACATE the order of removal, and REMAND the case for a hearing on Ko's adjustment application.

A true Copy:

         Teste:


                              _____
                                  *Clerk of the United States Court of*
                                     *Appeals for the Seventh Circuit*