In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2101

BORISLAV B. TEREZOV

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
A97 355 235.

ARGUED JANUARY 24, 2007—DECIDED MARCH 15, 2007

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Borislav Terezov, a national of Bulgaria, was ordered removed *in absentia* when he failed to appear at his removal hearing. He moved to reopen the proceedings because, he claims, he never received the hearing notice, which was sent to an address at which he no longer lived. The Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") found that the Department of Homeland Security ("DHS") had mailed the notice to the last address provided by Terezov. Terezov has filed a petition for review, which we grant. There are significant, unexplained gaps in the administrative record compiled by the Executive Office for Immigration Review, and given the state of the record, we are com-

pelled to conclude that the decision of the IJ, as supplemented by the opinion of the BIA, is not supported by substantial evidence.

## I.

In September 2003, just two months after he entered the United States without inspection through Piedras Negras, Mexico, Terezov applied for asylum. He claimed that he endured multiple interrogations and beatings at the hands of the police in Bulgaria due primarily to his Rom ethnicity and his political support for the Roma minority in Bulgaria. On his asylum application Terezov gave his address as 1313 West Taylor in Phoenix, Arizona. In October 2003, the United States Citizenship and Immigration Services ("USCIS"), the successor to the Immigration and Naturalization Service, wrote Terezov from its Los Angeles Asylum Office (which is actually located in Anaheim, California), requesting additional proof that he resided within its jurisdiction, which includes Phoenix. Terezov's reply is not in the administrative record.

As far as that record shows, Terezov's next written communication with the Los Angeles Asylum Office was a letter advising that he had moved to a new address in Carmel, Indiana. That handwritten letter, which bears at the top a stamped date of January 23, 2004, conveys the new address but nothing more. Terezov did not ask that his file be transferred to the Chicago Asylum Office or to any other office, and nothing in the administrative record discloses what, if anything, the Los Angeles Asylum Office did in response. What the record does show is that in June 2004 the USCIS received from Terezov an application for employment authorization at the agency's California Service Center in Laguna Niguel. In this application, which Terezov based on his pending asylum application, he listed a new Phoenix address: 12825 North

42nd Street, Apartment 1047. The USCIS corresponded with Terezov at this new address regarding the application for employment authorization, and when the agency denied that application in July 2004, it sent the written decision to Terezov at the new address. That document states explicitly that Terezov's asylum application was "currently at the Asylum Office in Los Angeles" and directed him to contact that office if he had "any questions about [his] application."

What happened in the following months is impossible to glean from the sparse administrative record. It appears that at some point Terezov's file was transferred to the Chicago Asylum Office, though when this occurred is unclear. All that we are able to piece together is that an asylum interview was scheduled, but Terezov did not attend. There is no documentation in the record showing how, or even if, Terezov was told about this asylum interview, nor does the record disclose when this interview was ordered or when precisely it was to take place. All the administrative record discloses is that on February 15, 2005, an asylum officer based in Chicago referred the matter to the immigration court in Chicago due to Terezov's absence from the asylum interview. That same date the Chicago Asylum Office mailed a Notice to Appear directing Terezov to attend a removal hearing before an IJ in April 2005. The Notice to Appear was sent by regular mail to the Indiana address given by Terezov a year earlier, but there is no evidence in the record that he actually received it. Terezov did not appear, and the IJ immediately ordered him removed *in absentia*. The immigration court also sent the order of removal to the Indiana address, but it was returned with the notation: "not deliverable as addressed, unable to forward."

One month later Terezov filed pro se a motion to reopen the removal proceedings. He did not say how he learned about the *in absentia* order of removal, but he expressed

surprise that it had issued. Terezov explained that he was living in Indiana looking for work from November 2003 until late February 2004, but was not living there when the Notice to Appear was mailed in February 2005. He denied ever receiving that notice. Terezov added that he submitted his asylum application to the "California District Office," and had never tried to transfer it elsewhere. He also insisted that he notified the Los Angeles Asylum Office after he moved back from Indiana to Phoenix, where he lived first at 12825 North 42nd Street, Apartment 1047 and later at 4704 East Paradise Village Parkway North, Apartment 139. Terezov attached to his motion copies of two certified-mail return receipts that he characterized as "confirmation from the Postal services for on time filing Change of Address Form." Both return receipts were stamped "received" by the Los Angeles Asylum Office, the first in April 2004 and the second in August 2004, and both were returned to Terezov at his apartment on North 42nd Street. Terezov also submitted copies of the USCIS communications he received at this Phoenix address regarding his application for employment authorization, including the adverse decision in July 2004 that told Terezov his asylum application was then located at the Los Angeles Asylum Office.

In opposing the motion to reopen, the government simply represented to the IJ that its review of the administrative file showed that Terezov "sent only one change of address to the Department [of Homeland Security]." The government explained that it failed to locate any "change of address notices or letter from the respondent in the administrative file" except for the handwritten change of address that "is date stamped January 23, 2004." Arguing that the Notice to Appear had been properly sent to the last address provided by Terezov, the government contended that Terezov failed to meet his burden for reopening. The IJ agreed, reasoning that "there is

nothing in the record to reflect that he ever provided notice to the Asylum Office of his return to Phoenix." The IJ further remarked that there was no indication in the record that the Notice to Appear was returned as undeliverable, and concluded that Terezov had failed to provide "credible evidence," such as "affidavits or other evidentiary material," to prove he never received it.

Terezov then retained counsel and appealed the IJ's decision to the BIA. In that appeal, counsel acknowledged that Terezov had changed his address to Carmel, Indiana, in January 2004 while he was in the Chicago area seeking employment, but reiterated Terezov's prior representation the he notified the Los Angeles Asylum Office in April 2004 about his return to Phoenix. Counsel argued that "DHS and the Asylum Office were on Notice since April 2004 of Borislav Terezov's new/correct address," ten months before the Notice to Appear was mailed to the outdated Indiana address. Counsel concluded that, "[c]learly, there can be no dispute that the Government sent the [Notice to Appear] to the old/wrong address in Indiana." Counsel resubmitted the two return receipts showing that the Los Angeles Asylum Office had received mail from Terezov in April 2004 and again in August 2004. Counsel also submitted affidavits from Terezov's wife, from one of his friends in Phoenix, and from his former Indiana landlord, who collectively vouched that Terezov lived in Phoenix when the Notice to Appear was mailed to his outdated Indiana address, and that he apprised the DHS every time he moved.

The government offered no response. Despite that silence, however, the BIA affirmed the denial of Terezov's motion to reopen. The BIA adopted the IJ's reasoning but added its own further explanation that Terezov had not provided "any reliable evidence" that he submitted a change-of-address form after returning to Phoenix, and thus was deemed to have received the Notice to Appear

at the Indiana address. The BIA gave no weight to the April and August 2004 return receipts because Terezov did not produce "a copy of the change of address form allegedly submitted" and, according to the BIA, had no "other proof . . . that he even submitted a change of address form after the one submitted in January 2004." The BIA also discounted the 2004 communications from the USCIS concerning Terezov's application for employment authorization because, according to the BIA, those communications proved only that the California Service Center, not the Los Angeles Asylum Office, knew of Terezov's return to Phoenix. Reasoning that an alien "cannot make himself unreachable, and then later ask to have his case reopened because he did not receive notice," the BIA dismissed Terezov's appeal.

## II.

In his petition for review, Terezov argues that it was an abuse of discretion not to reopen the proceedings because, he says, the evidence he submitted establishes that the DHS had his current Phoenix address but erroneously mailed the Notice to Appear to his outdated Indiana address. Essentially, this case turns on whether substantial evidence supports the conclusion of the immigration courts that Terezov did not update the Los Angeles Asylum Office with his new address when he returned from Indiana to Phoenix in February 2004.

The IJ denied Terezov's motion to reopen largely on the basis of the government's representation that it searched the administrative file but could not find any notification from Terezov that he had moved back to Phoenix from Indiana. The government's representation, however, is only as good as the file it searched, and in this case the administrative record is so incomplete as to make it impossible to draw any fair inference from the absence of

a particular document. For example, even though Terezov was placed in removal proceedings only because he did not attend his asylum interview, the administrative record includes no evidence showing that notice of that interview ever was sent to him at *any* address. An asylum applicant who fails to appear for a scheduled interview risks dismissal of his application, but a failure to appear will be excused if the asylum officer neglected to mail the interview notice to the last address provided by the applicant. *See* 8 C.F.R. § 208.10. Because there is no copy of the interview notice (or any other related documentation) in the administrative record, it is impossible to tell if the notice was mailed and if so, to what address. If we are to accept the government's logic—which the IJ did—we would have to conclude based on this record that notice of the asylum interview was not sent to Terezov at all. Surely the government would dispute that conclusion, but our point is that the government cannot have it both ways. What is not in the administrative record is significant only if the record is otherwise complete, but in this case the government wants us to overlook the obvious gaps in Terezov's file. We decline to take that approach.

Terezov argues that substantial evidence does not support the finding that his Notice to Appear was mailed to the last address he provided. We will uphold an agency's factual findings if they are supported by substantial evidence, which is "evidence a reasonable mind would find adequate to support a conclusion." *Singh v. Gonzales*, 404 F.3d 1024, 1027 (7th Cir. 2005). To initiate removal proceedings, the DHS must serve a Notice to Appear on the alien, *see* 8 U.S.C. § 1229(a), and service is sufficient if there is proof of "attempted delivery to the last address provided by the alien," *id*. §§ 1229(c), *see also* 1229a(b)(5)(A). If the alien fails to appear, the IJ can order him removed in his absence if the DHS "establishes by clear, unequivocal, and convincing evidence that the writ-

ten notice [pursuant to § 1229(a)] was so provided and that the alien is removable." *Id.* § 1229a(b)(5)(A). However, an *in absentia* order of removal can be rescinded upon a motion to reopen if the alien demonstrates that he did not "receive notice." *See id.* § 1229a(b)(5)(C)(iii); *Ko v. Gonzales*, 421 F.3d 453, 455-56 (7th Cir. 2005) (vacating denial of motion to reopen where notice was returned as undeliverable); *Sabir v. Gonzales*, 421 F.3d 456, 458-59 (7th Cir. 2005) (remarking that receipt, not notice, is the issue for a motion to reopen); *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004) (same).

This sparse record lacks substantial evidence to support that the Notice to Appear was sent to the last address Terezov provided. As we have noted, the only support for that finding is the government's representation, made in response to Terezov's motion to reopen, that the administrative file included only one change-of-address letter informing the Los Angeles Asylum Office of his November 2003 move to Indiana. But this administrative record lacks basic, relevant documents. For example, not only is there no copy of the asylum-interview notice, but neither is there any record of how the Los Angeles Asylum Office resolved its request for further proof of Terezov's residency within its jurisdiction, or any documents evidencing when and why the Los Angeles Asylum Office transferred Terezov's file to the Chicago Asylum Office. Thus, we ascribe little significance to the fact that the government can point to the absence of a second change-of-address form. The absence of a second form is equally consistent with Terezov's theory that his form was mishandled. And this theory is not implausible. According to a report released by the Government Accountability Office after the parties filed their briefs, the USCIS had entirely lost track of more than 100,000 alien files by July 2006. UNITED STATES GOVERNMENT ACCOUNTABILITY OFFICE, IMMIGRATION BENEFITS: ADDITIONAL EFFORTS NEEDED TO HELP ENSURE ALIEN FILES ARE LOCATED

WHEN NEEDED 4 (2006), *available at* http://www.gao.gov/
new.items/d0785.pdf?source=ra (last visited February 8,
2007). On the other hand, Terezov submitted evidence in
the form of documents received from the USCIS and re-
turn receipts to support his contention that he updated
the Los Angeles Asylum Office of his February 2004 re-
turn to Phoenix. Terezov also included the affidavits
from his wife, his friend, and his former Indiana landlord,
which corroborate his assertion that he updated the DHS
every time he moved.[1]

We have not had occasion to discuss what evidence
could support a finding that an alien failed to update his
address, but our review of facts in other immigration
contexts is instructive. We have acknowledged that an
alien can prove necessary elements of his asylum claim
through circumstantial evidence, and that the immigra-
tion courts must "consider the evidence as a whole," not as
separate fragments. *See Cecaj v. Gonzales*, 440 F.3d 897,
899 (7th Cir. 2006) (vacating removal orders where IJ
discredited evidence only after breaking it into separate
fragments and where indirect evidence proved disputed
element of asylum claim); *Gjerazi v. Gonzales*, 435 F.3d
800, 812 (7th Cir. 2006) (noting that alien can prove
political persecution with circumstantial evidence).
Moreover, in vacating a BIA denial of a motion to reopen,
we have noted that a "decision that resolves a critical

---

[1] The BIA did not mention the affidavits, which were sub-
mitted by counsel in Terezov's appeal to the BIA and thus were
not before the IJ. The BIA "will not engage in factfinding in the
course of deciding appeals," *see* 8 C.F.R. § 1003.1(d)(3)(iv), so the
BIA might have declined to consider these affidavits. The BIA's
order does not say either way, but the government mentions
the affidavits and discloses their content in its brief. The gov-
ernment has never taken the position that the affidavits were
not properly before the BIA.

factual question without mention of the principal evidence cannot be considered adequately reasoned." *Joshi,* 389 F.3d at 736-37. *Cf. Ayi v. Gonzales*, 460 F.3d 876, 881 (7th Cir. 2006) (holding that credibility finding that disregards asylum applicant's evidence without explanation is not supported by substantial evidence).

The return receipts, which Terezov consistently has said were from his change-of-address forms he sent to the Los Angeles Asylum Office, provide strong circumstantial evidence that Terezov informed that office of his return to Phoenix. One return receipt demonstrates that the asylum office received mail from Terezov in April 2004, just over a month after his return to Phoenix, and both receipts were returned to the new address in Phoenix, not the old Indiana address. And although the government asserts that DHS received only the January 2004 notification of Terezov's move to Indiana, it has never attempted to explain what mail was attached to these return receipts if not, as Terezov asserts, change-of-address forms. Surely he mailed *something*, but whatever it was, the asylum office did not put it in its file.

Along with this indirect evidence, Terezov also submitted with his motion to reopen the documents he received from the USCIS concerning his application for work authorization, but the IJ and the BIA ignored the import of this evidence. In discounting the USCIS documents, the immigration courts neglected to consider that those documents conclusively demonstrate that Terezov updated other DHS offices about his whereabouts, which corroborates his assertion that he also updated the asylum office: it counteracts any inference that he was hiding from immigration officials and shows his attentiveness to his case. And though this corroboration may be inconclusive, ignoring even inconclusive corroborating evidence can undermine the decision of an immigration court. *See Joshi*, 389 F.3d at 736-37; *Ko*, 421 F.3d at 455-

56 (rejecting IJ's finding that alien was deliberately hiding when she had maintained contact with immigration officials regarding her student visa even as DHS, unaware of her current address, was ordering her removed *in absentia*).

The BIA concluded that without producing a copy of what he sent, Terezov could not prove that he informed the Los Angeles Asylum Office of his return to Phoenix in February 2004. But to insist upon seeing a copy of the communication puts an alien who may not have retained a copy in a no-win situation. A copy of a change-of-address notification may be the best way of proving that the DHS relied on an outdated address, but no court has held that it's the *only* way. *Cf. Silva-Carvalho Lopes v. Gonzales*, 468 F.3d 81, 85-86 (2d Cir. 2006) (concluding that alien can prove lack of receipt through affidavit and other circumstantial evidence); *Nibagwire v. Gonzales*, 450 F.3d 153, 157-58 (4th Cir. 2006) (same); *Ghounem v. Ashcroft*, 378 F.3d 740, 745 (8th Cir. 2004) (same); *Joshi,* 389 F.3d at 736 ("[T]he intended recipient's affidavit of nonreceipt is evidence."); *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002) (same). The evidence, contrary to the conclusion of the IJ and BIA, shows that Terezov informed the Los Angeles Asylum Office of his February 2004 return to Phoenix, and that DHS thus failed to send the Notice to Appear to the last address provided by him.

It is an abuse of discretion to refuse to rescind an *in absentia* order of removal and reopen the proceedings when the record shows that the DHS sent the alien's Notice to Appear to an incorrect or old address. *See Singh v. Gonzales*, 412 F.3d 1117, 1121-22 (9th Cir. 2005) (concluding that denial of motion to reopen was abuse of discretion where evidence showed that Notice to Appear was sent to old address); *Beltran v. INS*, 332 F.3d 407, 408-09 (6th Cir. 2003) (reversing denial of motion to

reopen because hearing notice was sent to outdated address even though alien properly notified INS of his new address); *Kamara v. INS*, 149 F.3d 904, 907 (8th Cir. 1998) (noting that, because INS failed to send hearing notice to most recent address, alien did not receive proper notice and motion to reopen should have been granted). The DHS must provide an alien notice before placing him in removal proceedings, 8 U.S.C. § 1229(a)(1), and service by mail is sufficient only if "there is proof of attempted delivery to the *last address provided by the alien*," *id.* § 1229(c) (emphasis added). When the DHS has mailed notice to an incorrect address, the agency has not effected service in a proper manner and should not benefit from the presumption of receipt that normally flows from proof of mailing. *Cf. Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999) (noting that due process requires notice reasonably calculated to provide alien with actual notice of proceedings).

Here, the IJ and BIA concluded that Terezov received the Notice to Appear because, in their view, the administrative record showed that it was sent to the last address Terezov provided. But, as noted above, that finding is not supported by substantial evidence and therefore the DHS is not entitled to a presumption that the notice was properly delivered to Terezov. And without that presumption there is no evidence in this record that Terezov received notice; to the contrary, Terezov has consistently maintained that he moved from his Indiana address a year before the Notice to Appear was sent there. Accordingly, the refusal to set aside his order of removal was an abuse of discretion.

The petition for review is GRANTED and the case is REMANDED to the BIA for further proceedings.

No. 06-2101 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*