# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 8, 2010

Lyle W. Cayce
Clerk

No. 09-60073

DHANVIR TOORA,

Petitioner

v.

ERIC H HOLDER, JR, U S ATTORNEY GENERAL,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before DAVIS, WIENER, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner, Dhanvir Toora, proceeding *pro se*, raises on appeal the question of whether the departure bar, 8 C.F.R. § 1003.23(b)(1), applies to an alien who departs the United States *after* receiving notice of his deportation proceeding, but *before* the proceeding is completed and the Immigration Judge ("IJ") enters a deportation order. We find the departure bar does apply in this situation and divests the IJ of jurisdiction to hear the alien's motion to reopen his deportation proceeding.

No. 09-60073

## I.  FACTS

Toora is a native of India.  He illegally entered the United States in February 1995 without being inspected by an immigration officer.  The day after his entry, Toora was personally served with an Order to Show Cause why he should not be deported for entering the United States without inspection pursuant to then 8 U.S.C. § 1251(a)(1)(B) (now 8 U.S.C. § 1227(a)(1)(B)).  Toora was detained at the Port Isabel Service Processing Center ("PISPC") in Los Fresnos, Texas.

On March 13, 1995, a Notice to Appear ("NTA") was sent to Toora, care of PISPC, notifying him that his deportation hearing was scheduled for April 3, 1995. The Notice also stated that if Toora failed to appear at the scheduled deportation hearing, he could be ordered deported *in absentia.*

Also on March 13, 1995, Toora posted bond and was released from custody. Toora reported that he was moving to a New York address.  Toora left the United States on March 23, 1995, and returned to India without notifying INS of his departure.

On April 3, 1995, Toora's deportation proceeding was held.  Toora was not in attendance and the IJ ordered Toora deported *in absentia.*  The IJ determined that the record showed by clear and convincing evidence that Toora was provided with a written NTA and that he could be deported.

On August 27, 1995, Toora re-entered the United States under a different name.  He did not disclose his prior entry or the April 1995 deportation proceedings of which he had received notice.  Upon his re-entry, Toora applied for asylum.  Unaware of Toora's prior entry and deportation, an INS asylum officer granted Toora asylum.

In March 2007, DHS informed Toora of its intention to rescind the August 1995 grant of asylum.  DHS stated that the INS asylum officer had been without

jurisdiction to grant asylum because of Toora's earlier deportation proceedings. According to the DHS, 8 C.F.R. § 208.2(b) (now 8 C.F.R. § 1208.2(b)) gives immigration judges exclusive jurisdiction over asylum applications filed by aliens who are in deportation proceedings. DHS asserted that Toora had been ordered deported in April 1995, but that the order was never executed. DHS reasoned, therefore, that the deportation proceedings remained pending and thus the IJ retained exclusive jurisdiction over Toora's asylum application, to the exclusion of the INS officer. Based on this reasoning, DHS concluded the August 1995 grant of asylum by the INS asylum officer was void *ab initio*.

Toora did not challenge the DHS position that the asylum officer had been without jurisdiction. Instead, Toora responded by filing a motion to reopen and rescind the April 1995 *in abstentia* deportation order. Toora argued that he never received the NTA for the April 3, 1995 deportation hearing. The IJ first determined that Toora received written notice of the April 1995 deportation hearing. The IJ further found that under 8 C.F.R. § 1003.23(b)(1) (referred to as the "departure bar"), he lacked jurisdiction to consider the motion to reopen and denied the motion. Alternatively, the IJ determined that assuming he did have jurisdiction, Toora's motion should be denied because it was time-barred pursuant to 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1), which requires that a motion to reopen a deportation order entered *in absentia* must be filed within 180 days after the order of deportation is entered.

Toora appealed the IJ's order to the Board of Immigration Appeals ("BIA"). The BIA dismissed Toora's appeal. First, the BIA affirmed the IJs finding that Toora received notice of the April 1995 deportation hearing. The BIA concluded, however, that the IJ did have jurisdiction to hear Toora's motion to reopen because the departure bar was inapplicable. The BIA, nonetheless, agreed with the IJ that Toora's motion was time-barred and that no equitable tolling excused the late filing because Toora failed to exercise due diligence in seeking a

No. 09-60073

rescission of the April 1995 deportation order. The BIA then affirmed the denial of the motion to reopen.

Toora timely appealed the BIA's order.

## II. STANDARD OF REVIEW

This court has jurisdiction to hear this appeal under 8 U.S.C. § 1252(a)(1). On a petition for review of a decision of the BIA, we review questions of law *de novo* and findings of fact for substantial evidence. *Sung v. Keisler*, 505 F.3d 372, 375 (5th Cir. 2007) (citing *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001)). In reviewing the BIA's interpretation of immigration statutes, where Congress has evidenced a clear and unambiguous intent concerning the question before this court, we must give effect to Congress's intent. *White v. INS*, 75 F.3d 213, 215 (5th Cir. 1996) (citing *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984)). If a statute is silent or ambiguous, we will defer to the agency's interpretation of the provisions the agency administers, so long as those interpretations are based on a permissible construction of the statute. *Id.* (citing *Chevron*, 467 U.S. at 843).

## III. ANALYSIS

The threshold issue on appeal is whether the IJ had jurisdiction over Toora's motion to reopen.[1] Toora argues on appeal that the IJ correctly held that he lacked jurisdiction to consider Toora's motion to reopen the April 1995 deportation proceeding because Toora was subject to deportation proceedings when he departed the United States. Toora bases his argument on his

---

[1] Toora also raises the issue on appeal of whether the IJ in April 1995 had jurisdiction to order him deported. However, Toora did not raise this issue to the BIA. Therefore, Toora has failed to exhaust his remedy with regards to the argument, and we do not have jurisdiction to consider it. *See* 8 U.S.C. § 1252(d); *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009).

No. 09-60073

interpretation of the regulation establishing the departure bar, which states in pertinent part that "[a] motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. . . ." 8 C.F.R. § 1003.23(b)(1).  Toora argues that this regulation divested the IJ of jurisdiction to hear his motion to reopen and reconsider his April 1995 deportation.[2]

The Government argues that the BIA was correct in determining that the IJ had jurisdiction to hear Toora's motion.  The Government contends that the departure bar applies only when an alien departs the United States after an order of deportation is entered.

Toora argues first that the IJ and the BIA erred in finding that Toora received the NTA before he departed the country on March 23, 2007.  Our review of the record reveals that substantial evidence supports that finding, and we see no basis to disturb this finding of fact.  Because Toora received notice of his deportation proceeding and he was deportable based on his entering the United States without inspection, the original IJ had the authority pursuant to 8 C.F.R. § 1003.26 to hold a deportation hearing and enter a valid deportation order *in absentia*.

Because a valid deportation order was entered against Toora, the question in this case narrows to whether the departure bar applies to an alien who departs the United States *after* receiving notice of his deportation proceeding, but *before* the actual proceeding concludes and an IJ enters a valid deportation

---

[2] It is not clear to us how acceptance of this argument advances Toora's objective to obtain asylum.  If the IJ was divested of jurisdiction pursuant to the departure bar, it may be that Toora will argue to DHS that the INS asylum officer had jurisdiction to grant Toora asylum in August 1995.  However, there are obvious differences between jurisdiction to grant asylum and jurisdiction to consider a motion to reopen a deportation proceeding.  This issue is not presented to us, and we have no reason to comment further on it.

order.  This court has considered the application of the departure bar when the alien departs the United States *after* termination of removal proceedings.  In *Ovalles v. Holder*, 577 F.3d 288 (5th Cir. 2009), an alien was convicted of a felony and removed from the United States following a removal hearing before an IJ and an appeal to the BIA.  Three years after his removal, the alien filed a motion with the BIA to reopen and reconsider his removal proceedings in light of a United States Supreme Court case decided after he was deported.  We held that the departure bar applies to aliens who depart the United States after the termination of their removal proceedings, and that the IJ lacked jurisdiction to hear the alien's motion to reopen his case.  *See also Matter of Armendarez-Mendez*, 24 I&N Dec. 646, 651–52 (BIA 2008) (holding that the departure bar prohibited an alien from invoking BIA's jurisdiction to consider his motion to reopen when the motion was filed after the alien's departure from the United States following a final administrative order of removal).

The Ninth Circuit has examined the application of the departure bar to an alien who departs the United States *before* removal proceedings are initiated.  In *Singh v. Gonzales*, 412 F.3d 1117 (9th Cir. 2005), an alien remained in the United States past the time authorized on his visitor visa.  The alien initially applied for asylum, but then wrote a letter withdrawing his asylum application and departed the United States  The asylum office was not aware that the alien had departed the United States  and served a NTA on the alien's last known address.  When the alien did not appear, the IJ ordered him removed *in absentia*.  More than three years later, the alien filed a motion to reopen his removal proceedings.  The IJ denied the alien's motion.   The BIA cited the departure bar as the reason that it did not have jurisdiction to hear the alien's motion to reopen the case.  In its review of the BIA's decision, the Ninth Circuit held, *inter alia*, that the departure bar only applied in cases where the alien's

departure occurred after the removal proceedings were initiated.  *Id.* at 1121.
In reaching this conclusion, the Ninth Circuit stated:

> The Board interpreted [the departure bar] to mean that any time a
> petitioner files a motion to reopen after departing the country, the
> motion is barred.  The Board's interpretation forgets a fundamental
> premise: the scope of this regulation is clearly limited to persons
> who depart the United States *after removal proceedings* have
> already commenced against them.  Removal proceedings would have
> to commence before a motion to reopen or reconsider is procedurally
> possible.  Thus, the plain language of this regulation is limited to
> persons who depart the U.S. *after* removal proceedings have already
> commenced against them. . . .
>
> The Board's interpretation of this regulation also conflicts with
> established law.  Under the Board's reading of the regulation in this
> case, the clause "who is the subject of . . . removal proceedings"
> modifies the phrase "subsequent to his or her departure."  However,
> the well-settled interpretation of this regulation is that the clause
> "who is the subject of . . . removal proceedings" modifies the term
> "person."  The sentence as a whole is taken to mean that a person
> who leaves the U.S. *after removal proceedings have already been
> initiated* is barred from filing a motion to reopen."

*Id.* (citation omitted) (emphasis in original).

Based on these cases, it is clear that the departure bar applies to an alien
who is in removal proceedings and departs the United States *after* an order of
removal is entered against him.  And it is clear that the departure bar does not
apply to an alien who departs the United States *before* removal proceedings are
initiated.  These cases, however, do not explicitly answer the question of whether
the departure bar applies when an alien departs the United States *after* removal
proceedings are initiated but *before* an order of removal is entered.

The above quoted paragraph in *Singh*, however, is helpful to us in
analyzing the instant case in that it reasons that the bar applies after "removal
proceedings have already been initiated."  Because removal proceedings had

been initiated in today's case before Toora departed the country, this language supports the view that the departure bar applies.[3]

Furthermore, the plain language of the departure bar supports the view that it applies to an alien who departs the country after removal proceedings are initiated against him. The rule on its face applies to "a person who is the subject of removal proceedings" and it is not limited to persons who depart the country after they have been ordered removed.

This conclusion is further buttressed by a First Circuit case, *Shah v. Mukasey*, 533 F.3d 25 (1st Cir. 2008). In *Shah*, the alien entered the United States with authorization to temporarily remain in the United States. The alien then applied for asylum, but DHS referred his case to an IJ because DHS found the alien's testimony to not be credible. A NTA was sent to the alien at the address he provided. The alien failed to appear at his hearing, and the IJ entered a removal order *in absentia*. Four years later, the alien filed a motion to reopen his case alleging that he did not receive notice of the original hearing because he was in Canada when the notice was delivered. Recounting the decisions of the IJ and BIA, the First Circuit stated:

> [T]he IJ denied the motion to reopen . . . . The BIA affirmed the IJ's decision. It noted that Shah acknowledged that he had departed the United States for Canada during the pendency of his removal proceedings. Consequently, it found that he was barred from filing a motion to reopen based upon 8 C.F.R. § 1003.23(b)(1), [the departure bar] . . . .

---

[3] Pursuant to 8 U.S.C. § 1229(a)(1), immigration proceedings initiate on the date the alien receives his NTA. *See Saqr v. Holder*, 580 F.3d 414, 421 (6th Cir. 2009) ("[P]roceedings are 'initiat[ed]' by providing written notice to the alien to appear before an immigration judge."); *Terezov v. Gonzales*, 480 F.3d 558, 563 (7th Cir. 2007) ("To initiate removal proceedings, the DHS must serve a Notice to Appeal on the alien . . . ."); *Haider v. Gonzales*, 438 F.3d 902, 908 (8th Cir. 2006) (". . .[T]he INS initiates removal proceedings by personally serving an alien with an NTA . . . .").

*Id.* at 26.  On appeal, the First Circuit deferred to the factual determinations of the BIA and held that when an alien receives notice of his deportation proceeding and departs the country during the pendency of his deportation proceeding but before the issuance of the removal order, the departure bar applies.

The government argues that the BIA's interpretation of the departure bar is not arbitrary and we should accept that interpretation.  We agree with the Government that generally we owe deference to the BIA's interpretation of their own regulation.  *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45 (1984).  However, we perceive no ambiguity in the application of the departure bar to the facts of this case.  The regulation clearly states that the bar applies to an alien who departs after the initiation of the deportation proceedings.  The regulation does not limit the application of the departure bar to aliens who leave the country before the deportation order is issued.  In this case, Toora departed after the initiation of the deportation proceedings.

In finding the departure bar inapplicable, the BIA relied on one of its earlier opinions, *Armendarez-Mendez*, 24 I&N Dec. 646, which has little relevance to the facts of this case.  In *Armendarez-Mendez*, the alien was physically removed from the country after the deportation order was issued, so the applicability of the bar to an alien who left the country before the deportation order was issued was not considered.  Similarly, all of the cases relied upon by the Government to support the BIA's interpretation of the regulation are cases in which the deportation order was issued before the alien left the country.  None of the language relied upon by the Government indicates that these courts intended to address in any manner the fact pattern before us, that is when the alien was in deportation proceedings but left the country *before* the deportation order was issued.  Except for its reliance on these

distinguishable cases, the Government makes no effort to square its interpretation of the regulation with the regulation's plain language.

Because the BIA offers no authority, analysis, or explanation for its interpretation of the regulation, and because that interpretation does not "rationally flow from the language of the regulation," we decline to give deference to the BIA's interpretation. *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003) ("Courts grant an agency's interpretation of its own regulations considerable leeway. However, while an agency interpretation of a regulation is entitled to due deference, the interpretation must rationally flow from the language of the regulation." (quotations and citations omitted)).

Based upon the plain language of the regulation and the authorities and analysis discussed above, we agree with the IJ that the departure bar applies to divest the IJ of jurisdiction to consider Toora's motion to reopen. Before Toora departed the United States he received the NTA, and thus the removal proceedings were initiated at that time. Instead of appearing at the deportation proceedings to defend his interests, Toora elected to leave the United States on March 23, 2007. When Toora failed to appear for his deportation hearing, the IJ entered a valid deportation order *in absentia*. Because Toora left the United States after the initiation of removal proceedings, the IJ lacks jurisdiction to hear Toora's motion to reopen the proceedings under the departure bar, even though the deportation order was entered after Toora left the country.

## IV. CONCLUSION

For the reasons stated above, we grant the petition for review and remand this case to the BIA to dismiss the motion to reopen for the IJ's lack of jurisdiction.

No. 09-60073

SOUTHWICK, J., concurring.

I agree with the result reached by the majority. This separate opinion is to express my concern about points in the analysis of the departure bar.

As the majority notes, there is little authority addressing our factual situation. Toora departed the country after the Notice to Appear was served but prior to an order of removal by the immigration judge. The BIA concluded that a prerequisite for the departure bar was that an order of removal have been entered. Therefore, there was no bar.

The majority concludes otherwise. It refers for persuasive support to an opinion from another circuit. *Shah v. Mukasey*, 533 F.3d 25 (1st Cir. 2008). This case sustained a BIA decision that applied the departure bar to facts that are said to be similar. The First Circuit indicated that Shah alleged he was in Canada when the Notice to Appear was sent to his known domestic address. *Id.* at 26. The opinion also stated, though, that Shah acknowledged he departed during the pendency of the proceedings. *Id.* The factual statement – Shah was in Canada – and the legal acknowledgment are potentially inconsistent. The government's filing the Notice to Appear with the immigration court is what begins the removal proceedings, with service required upon the alien. 8 C.F.R. § 1003.14(a). Only if the alien departs during the pendency of the proceedings, not before they even begin, does the bar apply. *Singh v. Gonzales,* 412 F.3d 1117, 1121 (9th Cir. 2005). Whatever actually happened, *Shah* does not form a significant part of the majority's analysis.

*Shah* aside, there are two questions here. One is whether there is any ambiguity in the departure bar regulation. If there is, the question becomes whether to give deference to an interpretation by the administrative authority. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). I agree with the majority that the regulation in isolation appears fairly clear on this point. The BIA, though, concluded in an opinion issued after a

11

remand of another case from this court, that if "the departure bar rule is examined *in context*," some ambiguity in the literal meaning arises. *In re Armendarez-Mendez,* 24 I&N Dec. 646, 651 (BIA 2008). The context was largely the statutes on which the authority to issue the regulation was based. *Id.*

Deference is particularly appropriate to an agency's interpretation of its own regulations. *Ovalles v. Holder*, 577 F.3d 288, 292 (5th Cir. 2009) (discussing the departure bar regulation). We give "considerable legal leeway" to the agency. *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003). That does not mean we ignore the requirement of ambiguity, or allow irrational interpretations. I note, though, that the BIA in *Armendarez-Mendez* relied in part on a Supreme Court opinion in support of its view that ambiguity existed: "The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *Armendarez-Mendez,* 24 I&N Dec. at 651 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)).

It could be that the position taken by the BIA in this case could be understood, as *Armendarez-Mendez* said in rejecting another literal reading, when the context for the regulation is examined. Because reviewing all parts of the statutory or regulatory scheme and making them fit is part of determining meaning, I find nothing improper about such an analysis.

The problem is that the BIA has not engaged in any such careful or even binding review of the regulation in this case. Instead, in a brief order without this kind of analysis, a single member of the board concluded that the departure bar required an order of removal by the immigration judge prior to the departure. Single-member orders are permitted by the governing regulations. *See, e.g.,* 8 C.F.R. § 1003.1(d)(2), (e)(4), and (e)(5). Such single-member decisions, though, have no precedential force at the BIA. It takes a majority vote of the Board to make a particular decision of a three-member panel or the en banc

Board a precedent. *Id.*, § 1003.1 (g). The order entered in Toora's appeal by the BIA is not precedential. It is a poor candidate for any deference. I give it none.

Another relevant BIA decision is precedential. *Armendarez-Mendez*, 24 I&N Dec. 646. In well-explained analysis, it held the departure bar to be ambiguous for some purposes once the context for the language was understood. *Id.* at 650-51. We are not called upon here to determine if that is correct. Even if it is, there is not then any interpretation to which we owe deference that the bar only applies when departure occurs after an order of removal.

The BIA may be of that view, though. Other decisions have at times quoted the departure bar, which does not refer to an order of removal, then explained it in terms of a departure after an order of removal. *E.g., Armendarez-Mendez*, 24 I&N Dec. at 648 ("We have reiterated that construction of the rule in an unbroken string of precedents extending over 50 years, consistently holding that reopening is unavailable to any alien who departs the United States after being ordered removed"); *In re G-N-C*, 22 I&N Dec. 281, 288 (BIA 1998) ("[T]he Board lacks jurisdiction over a motion to reopen after the respondent's departure from the United States pursuant to a final order of deportation.") One reason this may be so is suggested by the concept that departure executes the removal order; if there is no order, the departure does not create a bar.

> As a rule, once an alien has been removed, his underlying removal order is deemed executed, the proceedings that led to that order are consummated, and whatever immigration status the removed alien may have possessed before departure is vitiated.

*Armendarez-Mendez*, 24 I&N Dec. at 656 (citing *Mrvica v. Esperdy*, 376 U.S. 560, 563-64 & n.4, 567-68 (1964)). However, these indications are insufficient both in clarity and in explanation to raise considerations of deference.

I concur that the departure bar applies on these facts.