# United States Court of Appeals
## For the First Circuit

No. 05-2105

VLADIMIR GRIGOUS,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Selya, Lipez, and Howard,
Circuit Judges.

Susan V.H. Degrave on brief for petitioner.
Karen L. Goodwin, Assistant United States Attorney, and
Michael J. Sullivan, United States Attorney, on brief for
respondent.

August 24, 2006

**LIPEZ, <u>Circuit Judge</u>**.  Vladimir Grigous seeks review of the order of the Board of Immigration Appeals ("BIA") denying his motion to reopen his removal proceedings.  After Grigous missed a rescheduled hearing on his removability and asylum claim, the Immigration Judge ("IJ") ordered him removed <u>in</u> <u>absentia</u>.  The petitioner then filed a motion to reopen removal proceedings, explaining that his attorney had a scheduling conflict.  Noting that the petitioner had not given any explanation for his own failure to appear before the court and that his attorney's failure to notify the immigration court of the attorney's inability to appear was inexcusable, the IJ denied his motion.  Grigous appealed to the BIA, claiming that the government had failed to provide him with notice of his hearing date in violation of 8 U.S.C. § 1229a and that he had not been advised in his native language of the consequences of not appearing at his hearing pursuant to <u>In re M-S</u>, 22 I. & N. Dec 349 (BIA 1998) (en banc).  The BIA summarily affirmed the IJ's denial of Grigous's motion to reopen.  We deny Grigous's petition for review.

## I.

Grigous, a citizen of Ukraine, entered the United States on or about September 3, 1990, as a nonimmigrant visitor for pleasure with authorization to remain in the United States until March 2, 1991.  He remained in the United States past that date and applied for asylum on February 12, 1993.  On June 26, 1997, the

-2-

government served him with a Notice to Appear, charging him with inadmissibility as a nonimmigrant visitor who remained in the United States longer than permitted, pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). We describe the proceedings before the IJ, BIA, and the district court below.

## A. The IJ and BIA decisions

A hearing with the IJ was scheduled for February 11, 1998. Grigous missed the hearing, and the IJ ordered him removed in absentia. On February 21, 1998, an attorney, Michael G. Moore, entered an appearance for Grigous and moved to reopen on the ground that Grigous had been too ill to attend the February 11, 1998, hearing. The IJ granted the motion to reopen and continued the hearing until May 17, 1998. For reasons that are not clear from the record, that hearing was rescheduled to August 5, 1998. Moore then requested another continuance to accommodate his vacation schedule, and the hearing was rescheduled to August 26, 1998. A notice of that August 26, 1998 hearing date was mailed to Moore.

Neither Grigous nor Moore appeared at the August 26, 1998 hearing, and the IJ again ordered Grigous removed in absentia. On September 6, 1998, Grigous, through Moore, filed a second motion to reopen the proceedings, explaining that Moore was in immigration court in Hartford, Connecticut, on August 26, 1998, and thus was unable to attend the hearing. The motion to reopen also noted that

-3-

the IJ had ordered removal to the United Kingdom, rather than Ukraine.

On September 29, 1998, the IJ denied Grigous's motion to reopen. The IJ found that Grigous had failed to explain Grigous's failure to appear for the hearing on August 26, 1998, concluding that "[t]o the extent that counsel's excuse for his non appearance is justifiable, it does not relieve the respondent of his obligation to appear." The IJ also noted that "the fact that counsel for the respondent did not notify the Boston Immigration Court of the conflict is inexcusable for he was duly notified of the hearing date and had sufficient time to protect the interest of both his clients by requesting permission not to appear from either Court." For these reasons, the IJ denied the motion. However, the IJ issued an amended removal order correcting the country of removal to Ukraine.

Grigous appealed to the BIA, arguing that he had not received notice of the hearing and that he was never warned of the consequences of his failure to appear in his native language. The BIA summarily affirmed the IJ's decision on May 12, 2002.

**B. Grigous's habeas petition**

On August 19, 2002, the petitioner filed a petition for habeas corpus in federal district court in Connecticut, again challenging his in absentia removal order for lack of notice and appropriate warnings. On March 28, 2003, the district court stayed

the petitioner's deportation until further notice. Because the petitioner was still represented by Moore, the attorney who had received notice but did not appear at Grigous's hearing, the government petitioned the court for a conflict hearing to ascertain whether the petitioner wanted to continue to be represented by Moore and whether he wished to waive any ineffective assistance of counsel claim against Moore. The district court scheduled a conflict hearing, but continued it because Grigous lacked an interpreter. Moore then filed a motion for a change of venue, explaining that Grigous had moved to Massachusetts.

Before the rescheduled conflict hearing took place and before the court ruled on the venue motion, the government filed a motion for a stay of proceedings, informing the court that Moore had been disbarred from the Massachusetts bar on August 8, 2003, for lying on his bar application. The government also noted that Moore had previously been a member of the Connecticut bar, but he had resigned in conjunction with grievance and criminal proceedings in 1971. Although Moore had retained his admission to practice in the federal district court in Connecticut, civil proceedings were about to commence on that admission as well. Because Moore was no longer licensed to practice law in any jurisdiction, the government sought to stay proceedings until Moore either withdrew from the case or until the civil proceedings on his authorization to practice in the district court had concluded. The government did

not object to continuing the stay of deportation until the issue was resolved.

On October 2, 2003, the district court granted the motion for the stay of proceedings and continued the stay of deportation. On October 14, 2003, a new attorney, Robert Lucheme, appeared on behalf of Grigous, claiming to replace Moore. Lucheme filed a "motion for decision," explaining that "there is no claim for ineffective assistance of counsel" and that any such claim would be procedurally barred in any event. The motion stated that the only issue in this case was whether Grigous had received the proper notice of his missed hearing. The government opposed the motion, arguing that "[t]o the contrary, the record, as it stands now, could be subject to a claim of ineffective assistance of counsel" and that, based on the facts of this case, such a claim might not be procedurally barred. The government also expressed concern that Grigous's new attorney may be working with Moore, that Moore had not formally withdrawn from the case, and that on the eve of the last hearing, Moore had offered the government a signed stipulation dismissing Grigous's habeas petition with prejudice, an offer that the government "did not feel comfortable" accepting. Lucheme responded with a motion for sanctions, claiming that the government was improperly attempting to discredit him in the proceedings. On January 16, 2004, Moore filed a motion to withdraw as counsel.

On January 29, 2004, the district court granted the petitioner's motion for a change of venue to the federal district court in Massachusetts. Because of the change in venue, the court denied as moot Lucheme's motions for a decision and sanctions and Moore's motion to withdraw.

Grigous obtained a new attorney for his proceedings in Massachusetts. However, before any decision was reached by the district court in Massachusetts, the government moved to transfer the case to the court of appeals pursuant to section 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, which Congress had recently enacted.[1] The district court granted the motion and transferred the case to us. Pursuant to section

---

[1] REAL ID Act § 106(c) states:

> If an alien's case, brought under [habeas], and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section, or under section 309(c)(4)(D) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note). The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply.

106(c) of the REAL ID Act, we treat the transferred habeas petition as a petition for review under 8 U.S.C. § 1252(b)(2).

## II.

We review the BIA's denial of the petitioner's motion to reopen for abuse of discretion. See Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003). Abuse of discretion exists "where the BIA misinterprets the law, or acts either arbitrarily or capriciously." Maindrond v. Ashcroft, 385 F.3d 98, 100 (1st Cir. 2004) (internal quotation marks and citation omitted). "Where, as here, the BIA summarily affirms an IJ's [decision], we review directly the IJ's decision as if it were the decision of the BIA." Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005).

The IJ in this case treated Grigous's motion to reopen as a request to rescind the in absentia removal order. Under the INA, "[a]ny alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . ." 8 U.S.C. § 1229a(b)(5)(A). An in absentia removal order may be rescinded upon a motion to reopen "filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances" or "filed at any time if the alien demonstrates that

-8-

the alien did not receive notice." 8 U.S.C. § 1229a(b)(5)(C). These procedures differ from the procedures that apply to motions to reopen before the IJ or BIA in general. Cf. 8 C.F.R. §§ 1003.2(c), 1003.23(b). Concluding that the government had provided notice of the hearing to Grigous through his attorney and that Grigous offered no explanation for his failure to appear, the IJ rejected the motion to reopen to rescind the in absentia order.

In his petition for review, Grigous argues that he seeks a motion to reopen his proceedings to apply for asylum under the general motion to reopen procedures set forth in 8 C.F.R. § 1003.23(b), not a motion to reopen to rescind his in absentia removal order under 8 U.S.C. § 1229(b)(5)(C). See Wu v. INS, 436 F.3d 157, 163 (2d Cir. 2006) (explaining that, under certain circumstances, a petitioner who has been ordered removed in absentia may seek reopening to apply for discretionary relief under the general reopening regulations without seeking rescission of the in absentia removal order under 8 U.S.C. § 1229a(b)(5)(C)). Grigous does not raise his previous argument that the in abstentia order should be rescinded because the government failed to provide him with notice of the date of the hearing.[2] Nor does he argue, in

---

[2] In any event, there was no merit to Grigous's claim that the government failed to provide him with proper notice of the hearing under the INA. All of the applicable provisions of the INA explicitly state that the government must provide notice to the petitioner or his or her counsel of record, if any. See 8 U.S.C. §§ 1229a(b)(5)(A), 1229(a)(1), 1229(a)(2)(A). The record demonstrates that the government sent a Notice of Hearing form to

-9-

this petition, that his failure to appear was due to extraordinary circumstances, such as ineffective assistance by his former counsel.[3]  Instead, Grigous argues only that his motion to reopen to apply for asylum should have been granted because "the failure to inform petitioner of the consequences of [his] failure to appear for subsequent hearings in a language that he could understand violated due process protections and the BIA's past precedent."  Thus, we focus on this argument.  We begin by addressing the government's argument that Grigous lacks a factual basis for his claim, and then turn to the merits of Grigous's argument.

## A.  Evidentiary basis for Grigous's claim

We note at the outset the government's contention that Grigous lacks a factual basis for his argument that the government failed to provide him oral warnings, in a language he could understand, of the consequences of failing to appear at his hearing.  The written Notice to Appear, which Grigous signed, states that Grigous received oral notice in English of the consequences of failing to appear at his hearing before the IJ.

Grigous's attorney, and Grigous does not claim that his attorney did not receive it.  Thus, the government met its obligation to provide notice of the hearing date under the INA.

[3] See Borges v. Gonzales, 402 F.3d 398, 408 (3d Cir. 2005) (noting that "ineffective assistance of counsel may support a motion to reopen [an in absentia removal order] based on exceptional circumstances"); Asaba v. Ashcroft, 377 F.3d 9, 11 n.4 (1st Cir. 2004) (noting that "[t]he BIA has found that ineffective assistance of counsel may qualify as an exceptional circumstance" for the purposes of rescinding an in absentia removal order).

Grigous contends in his brief that he does not understand English, but he failed to offer evidence below in support of this assertion. For example, Grigous's affidavit in support of his motion to reopen says nothing regarding his English proficiency and makes no assertion that he was not given the proper oral warnings.

To make up for this absence of evidence, Grigous's attorney notes that the district court granted a continuance in Grigous's conflict hearing in order to secure an interpreter. Although this fact may provide some support for Grigous's claim, it does not, in and of itself, demonstrate that he does not understand English. Moreover, as we explain below, even assuming that Grigous does not understand English and was not given oral warnings in his native language of the consequences of his failure to appear at his hearing, he nonetheless fails to establish that the BIA abused its discretion in denying his motion to reopen to apply for asylum.

**B. Requirements for filing a motion to reopen to apply for relief following an <u>in absentia</u> removal order**

Grigous relies heavily on <u>In re M-S-</u>, 22 I. & N. Dec. 349 (BIA 1998) (en banc), for the proposition that the BIA should have granted his motion to reopen due to the lack of appropriate oral warnings. In that case, the BIA explained that a petitioner may seek reopening to apply for certain forms of previously unavailable discretionary relief, without meeting the requirements for rescinding an <u>in absentia</u> removal order, where the government failed to give oral warnings of the consequences of failing to

-11-

appear in a language that the petitioner understands.  See In re M-S-, 22 I. & N. Dec. at 352-57; see also Wu, 436 F.3d at 163 (discussing the BIA's decision in In re M-S-).  As we explain in further detail below, however, the question of whether oral warnings were given prior to an in absentia removal order is important under the INA only in narrow circumstances.

The petitioner in In re M-S- sought to reopen her proceedings to file for adjustment of status, discretionary relief that was not available to her at the time of her hearing when she was ordered deported in absentia.  See id. at 356-57.  She did not seek to challenge her removability through a motion for reopening to rescind the in absentia order, and instead filed a motion to reopen under the regulations permitting reopening in cases generally.  However, the INA explicitly bars petitioners with in absentia removal orders from reopening their cases to apply for certain forms of discretionary relief within 10 years from the date of the final order of removal:

> Any alien against whom a final order of removal is entered in absentia under this subsection and who . . . was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences . . . of failing, other than because of exceptional circumstances . . . to attend a proceeding under this section, shall not be eligible for relief under [8 U.S.C. §§ 1229b, 1229c, 1255, 1258, or 1259] for a period of 10 years after the date of the entry of the final order of removal.

-12-

8 U.S.C. § 1229a(7).[4]  The BIA noted that adjustment of status was one of the forms of discretionary relief specifically mentioned in this provision and thus, if the petitioner was provided with the proper oral notice, she would not be eligible for adjustment of status.  See In re M-S-, 22 I. & N. Dec. at 355.  However, because the petitioner was not provided with appropriate oral warnings, the BIA reasoned that this failure meant that the petitioner was not ineligible for adjustment of status under the INA:

> [S]ection [1229a(b)(7)] specifies that if an alien fails to appear at a deportation hearing after receiving oral notice, in a language the alien understands, of the consequences of failing to appear, the alien is ineligible . . . for the forms of relief from deportation listed in [§ 1229a(b)(7)]. Conversely, if the oral warnings are not provided, relief is not precluded.  To rule otherwise would render surplusage the requirement of [8 U.S.C. § 1229a(b)(7)] that the oral warnings be given before the consequences ensue.

Id.  Because relief was not precluded, the BIA could consider whether the petitioner had established a prima facie case for adjustment of status, warranting reopening under the applicable regulations.  Id.

Grigous relies solely on this case and the language of 8 U.S.C. § 1229a(b)(7) to support his argument that he is entitled to reopening due to the government's alleged failure to provide him

---

[4] At the time of the IJ's decision in In re M-S-, the predecessor statute to 8 U.S.C. § 1229a(7) applied, barring relief for a period of 5 years.  See 8 U.S.C. § 1252b(c)(3)(1994) (repealed 1996).

-13-

with oral warnings, in his native language, of the consequences of his failure to appear. However, In re M-S- and the statute do not help him. First, asylum is not one of the forms of relief listed in 8 U.S.C. § 1229a(b)(7), and thus Grigous's eligibility for asylum is unaffected by this provision. In other words, Grigous can apply for reopening under the regulations governing motions to reopen in general, and the IJ or the BIA can exercise discretion to grant or deny his motion, without regard to any bar in 8 U.S.C. § 1229a(b)(7). Second, even if 8 U.S.C. § 1229a(b)(7) applied and the government was required to provide oral warnings in Grigous's language pursuant to that provision, the government's failure to do so would not mean that Grigous is automatically entitled to reopening. It only means that "relief is not precluded" under 8 U.S.C. § 1229a(b)(7) and that he must still meet the requirements for motions to reopen under the general regulations. In re M-S-, 22 I. & N. at 355. Thus, in any event, Grigous's motion to reopen could have been denied if it failed to meet the requirements of the applicable regulation governing his motion to reopen.

Grigous's motion does not meet the requirements of the applicable regulation. See 8 C.F.R. § 1003.23 (setting the general standards for granting motions to reopen before the IJ). Grigous, unlike the petitioner in In re M-S-, is not seeking previously unavailable relief. He applied for asylum in 1993 and it is this application for which he seeks an adjudication. Typically, a

motion to reopen to apply for relief may only be granted if the petitioner offers evidence that is "material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.23(b)(3); see also 8 C.F.R. § 1003.2(c). Grigous fails to address these requirements or even discuss the merits of his asylum claim in his petition for review. Thus, his case differs from In re M-S- and other cases where the petitioner was able to show a basis for reopening to apply for discretionary relief. See In re M-S-, 22 I. & N. Dec. at 357 (finding that the petitioner "has met the general motions requirements and has provided sufficient evidence to indicate a reasonable likelihood that her application [for adjustment of status] may succeed on the merits"); Wu, 436 F.3d at 164 (remanding where the BIA failed to consider the petitioner's argument that he was entitled to reopening to apply for asylum based on a change of law arising after his in absentia removal order). Thus, the BIA did not abuse its discretion, under the INA and its regulations, in affirming the IJ's denial of Grigous's motion to reopen.

## C. Due process

Finally, we note that insofar as Grigous argues that the right to receive oral warning in his native language arises from the due process right to adequate notice, as opposed to any statutory requirement in 8 U.S.C. § 1229a(b)(7), that contention suffers from at least three serious flaws.

First, Grigous has utterly failed to develop that argument in his briefs.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Second, as we have previously discussed, he has not established a factual basis for this argument.  Third, even assuming that his argument is not waived and has an adequate factual basis, Grigous has failed to demonstrate any prejudice as a result of the lack of appropriate oral warnings.  See Lattab v. Ashcroft, 384 F.3d 8, 20 (1st Cir. 2004) ("[B]efore a petitioner in an immigration case may advance a procedural due process claim, he must allege some cognizable prejudice fairly attributable to the challenged process.").  This was not the first time that Grigous had been ordered deported in absentia.  He was able to get his first in absentia deportation order rescinded through a motion to reopen, providing a letter from his doctor explaining that he had been too ill to attend that hearing.  Under these circumstances, Grigous is hard pressed to explain why the alleged failure of the government to provide him with oral warnings in his native language of the consequences of his failure to appear prejudiced him with respect to missing this subsequent hearing.  Furthermore, as we have noted, Grigous has not even addressed the merits of his asylum claim and whether there is a likelihood that he would have been

granted relief.  Having failed to establish prejudice, Grigous may not advance this due process claim here.[5]

### III.

The petition for review of the BIA's affirmance of the IJ's denial of Grigous's motion to reopen his proceedings is denied.

So ordered.

---

[5] Although we do not reach the question of whether, regardless of the applicability of 8 U.S.C. § 1229a(b)(7), due process requires the provision of oral warnings in a language that the petitioner understands, it is clearly the better practice for the IJ to provide these warnings to ensure that petitioners with limited English proficiency -- some of whom may lack representation or adequate representation -- are aware of the consequences of their failure to attend future hearings.