# United States Court of Appeals
## For the First Circuit

No. 06-2776

SERGIO ARMANDO ARAGÓN-MUÑÓZ,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,[*]

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch,
and Lipez, <u>Circuit Judges</u>.

<u>Christopher J. Stender</u> and <u>Stender and Pope, PC</u> on brief for petitioner.
<u>Shahrzad Baghai</u>, Trial Attorney, <u>Peter D. Keisler</u>, Assistant Attorney General, and <u>Anthony W. Norwood</u>, Senior Litigation Counsel, on brief for respondent.

March 21, 2008

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey has been substituted for former Attorney General Alberto R. Gonzáles as the respondent herein.

**LIPEZ**, <u>Circuit Judge</u>.  Sergio Armando Aragón-Muñóz, a citizen of Guatemala, seeks review of the order of the Board of Immigration Appeals ("BIA" or "Board") denying his motion to reopen his removal proceedings.  On May 25, 2000, after Aragón-Muñóz failed to appear at a hearing on his removability and asylum claim, the Immigration Judge ("IJ") ordered him removed in absentia.  More than four years later, Aragón-Muñóz filed a motion to reopen on the ground that he had not received the Notice to Appear ("NTA") because he had moved to Arizona.  He further argued that even if he had received the NTA, the notice was insufficient because he was entitled to an oral warning in Spanish, his native language, of the consequences of failing to appear.

The IJ denied his motion to reopen without issuing an opinion.  Aragón-Muñóz appealed to the BIA, which remanded the case for a full explanation of the reasons for the denial.  In response, the IJ entered a decision explaining that Aragón-Muñóz had failed to adduce any evidence that he had changed his address.  The BIA affirmed, elaborating on the lack of evidence in the record.  We deny Aragón-Muñóz's petition for review.

## I.

Aragón-Muñóz entered the United States on or about August 20, 1994.  On September 14, 1994, he filed an application for asylum, which listed his address as "309 West 12th Street, Lexington, Nebraska 68850."  On August 24, 1999, he attended his

asylum interview in Boston, Massachusetts. The record contains two copies of Aragón-Muñóz's asylum application. One shows the Nebraska address. The second contains hand-written edits, labeled as correction "(1)," changing the address to "40 Huldah St., Providence, Rhode Island 02909." This copy of the application includes Aragón-Muñóz's signature, dated August 24, 1999, acknowledging, inter alia, that correction "(1)" had been made by him or at his request.

On March 20, 2000, the Immigration and Naturalization Service sent an NTA to Aragón-Muñóz via regular mail to the Rhode Island address indicated on the edited asylum application. The NTA ordered Aragón-Muñóz to appear before an IJ in Boston on May 25, 2000. He failed to appear at the scheduled hearing. The government proceeded in absentia, resting on the application for asylum containing the Rhode Island address and the NTA, which was mailed to that address. The IJ ordered that Aragón-Muñóz be removed to Guatemala. A copy of the removal order was sent via regular mail to the Rhode Island address on the asylum application.

On April 20, 2004, Aragón-Muñóz filed a motion to reopen removal proceedings. He alleged that he did not receive the NTA; that he had given an Arizona address to the asylum officer at his August 1999 interview; and that he was assured that his new address would be noted in the file, although "[t]his apparently did not happen." He also argued that, because he had never appeared in

-3-

immigration court, "he was never advised in Spanish of the consequences of failure to appear."

The IJ denied Aragón-Muñóz's motion without a written opinion. She indicated in a hand-written notation on the motion paper that the motion had been denied because Aragón-Muñóz had failed to state any facts "which could possibly warrant reopening." Following Aragón-Muñóz's appeal to the BIA, the Board remanded the case to the IJ "for inclusion of an appropriate decision," finding the hand-written notation insufficient.

The IJ then issued a decision explaining that Aragón-Muñóz had failed to present evidence that he did not receive proper notice of the hearing. Specifically, she stated that the NTA had been sent to Aragón-Muñóz's last known address, as indicated on the corrected asylum application. She noted that Aragón-Muñóz had failed to provide any evidence of an address change and that the record contained no change of address form.

Aragón-Muñóz once again appealed to the BIA, arguing that the hand-written edits to his asylum application had been made in 1994, not at the August 1999 interview. He also asserted that he sought relief through adjustment of status because he had married a lawful permanent resident of the United States and had an approved I-130, Petition for Alien Relative. However, he provided no documentary evidence of the I-130 or the marriage itself.

The Board affirmed. In its decision, the Board rejected Aragón-Muñóz's claim that the hand-written edits had been made in 1994. It stated that these corrections appear to have been made during the August 1999 asylum interview. It supported this conclusion by noting that a photocopy of an employment authorization card, issued by the state of Rhode Island in February 1999 with an expiration date of February 2000, accompanied the edited asylum application. The Board also noted that the affidavit included with Aragón-Muñóz's motion to reopen "fails to identify the exact address he purportedly lived at in Arizona, nor does it indicate when he allegedly moved." Moreover, the Board noted that Aragón-Muñóz had not provided any evidence that he ever resided at any Arizona address. This petition for review followed.

## II.

We review the denial of Aragón-Muñóz's motion to reopen for abuse of discretion. Grigous v. Gonzales, 460 F.3d 156, 159 (1st Cir. 2006). We will find an abuse of discretion "'where the BIA misinterprets the law, or acts either arbitrarily or capriciously.'" Id. (quoting Maindrond v. Ashcroft, 385 F.3d 98, 100 (1st Cir. 2004)). We defer to the factual determinations made by the BIA if they are based on "reasonable, substantial, and probative evidence." Ymeri v. Ashcroft, 387 F.3d 12, 17 (1st Cir. 2004). Where, as here, the Board issues its own opinion and does

not adopt the IJ's decision, we review the decision of the Board. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

An alien's failure to appear at a scheduled immigration hearing results in mandatory entry of an in absentia removal order if the government establishes that written notice of the hearing was given and that the alien is removable as charged. 8 U.S.C. § 1229a(b)(5)(A).[1] A notice to appear, as described in 8 U.S.C. § 1229(a), sent to the most recent address provided by the alien is deemed sufficient written notice to satisfy the statute. 8 U.S.C. § 1229a(b)(5)(A); see also 8 U.S.C. § 1229(c)("Service by mail under this section shall be sufficient if there is proof of attempted delivery to the last address provided by the alien . . . ."). If the alien has failed to provide the government

---

[1]The full text of this section provides:

Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2) of this section). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

8 U.S.C. § 1229a(b)(5)(A).

with his most recent address, no notice is required before the in absentia order may be issued.  8 U.S.C. § 1229a(b)(5)(B).

There are several ways for an alien who has been ordered removed in absentia to reopen his proceedings.  First, the statute provides that an alien who has received notice may seek rescission of the in absentia order by filing a motion to reopen within 180 days and showing that his "failure to appear was because of exceptional circumstances."  8 U.S.C. § 1229a(b)(5)(C)(i).  Aragón-Muñóz makes no claim of exceptional circumstances nor was his application filed within 180 days.

Second, the statute provides that an in absentia order may be rescinded at any time if the alien demonstrates that he did not receive notice of the hearing.  8 U.S.C. § 1229a(b)(5)(C)(ii).  The alien bears the burden of demonstrating that notice was never received.  Sousa v. Ashcroft, 393 F.3d 271, 275 (1st Cir. 2005).

The Board found that Aragón-Muñóz failed to meet his burden of demonstrating that he did not receive the NTA.  The record does not compel us to conclude otherwise.  The BIA reasonably concluded that the hand-written edits to the asylum application had been made at the August 1999 interview and that the attached copy of Aragón-Muñóz's 1999-2000 Rhode Island employment authorization card supported this view.  We add that Aragón-Muñóz's 1999 signature acknowledging the correction also strongly supports the conclusion that the change was made in 1999 and not 1994.  As

-7-

the BIA noted, Aragón-Muñóz introduced no affirmative evidence of where he was living in March 2000 when the NTA was sent to the Rhode Island address. Hence, there is no affirmative evidence, other than Aragón-Muñóz's vague assertion that he lived somewhere in Arizona at the time, to support the contention that he did not receive the NTA. Accordingly, the BIA did not abuse its discretion in denying the motion to reopen.[2]

## III.

Aragón-Muñóz also contends that he is entitled to reopening of his removal proceedings because he was not provided with an oral warning in Spanish of the consequences of failing to appear at the hearing. He relies on 8 U.S.C. § 1229a(b)(7), which provides:

> Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice . . . was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances . . . to attend a proceeding under this section, shall not be eligible for relief under [8 U.S.C. §§ 1229b, 1229c, 1255, 1258, or 1259] for a

---

[2]An alien may also be able to avoid the consequences of an in absentia removal order by meeting the general requirements for a motion to reopen removal proceedings. See 8 C.F.R. § 1003.23(b)(1)-(2). Aragón-Muñóz does not provide any developed argument that he has met these general requirements, and as we discuss infra in Part III, he has not, in fact, satisfied the general requirements for a motion to reopen.

period of 10 years after the date of the entry of the final order of removal.

However, Aragón-Muñóz misunderstands this provision. It operates as a ten-year bar to future eligibility for certain forms of discretionary relief when oral notice in the alien's native language is given prior to entry of the in absentia removal order. Grigous, 460 F.3d at 161. Although the statutory bar applies if oral notice was given, the statute does not purport to require such notice. As we made clear in Grigous, the government's failure to provide oral warnings in an alien's native language does not mean that he is "automatically entitled to reopening." Id. at 162 (emphasis in original). On the contrary, the failure to give oral warnings means only that relief is not precluded by the statute and "that he must still meet the requirements for motions to reopen under the general regulations." Id. Those regulations require that a motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted" and be supported by "the appropriate application for relief and all supporting documents." 8 C.F.R. § 1003.23(b)(3).

Aragón-Muñóz did not introduce any new facts in support of his asylum application and did not include any documentary evidence in support of his contention that he is now entitled to an adjustment of status based on his marriage to a legal permanent resident. Accordingly, the absence of oral notice is not relevant because Aragón-Muñóz did not meet his burden under the general

-9-

regulations governing motions to reopen.  We deny his petition for review.

Petition denied.