# United States Court of Appeals
## For the First Circuit

No. 07-2001

IFTIKHAR H. SHAH,

Petitioner,

v.

MICHAEL B. MUKASEY,[*] Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

LYNCH, <u>Circuit Judge</u>,
MERRITT,[**] <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

<u>Kevin R. Murphy</u>, on brief for petitioner.
<u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General, Civil Division, <u>Terri J. Scadron</u>, Attorney, United States Department of Justice, Civil Division, on brief for respondent.

July 10, 2008

---

[*]Pursuant to Fed. R. App. P. 43(C)(2), Attorney General Michael B. Mukasey is substituted for former Attorney General Alberto Gonzales as respondent.

[**]Of the Sixth Circuit, sitting by designation.

**MERRITT**, <u>**Senior Circuit Judge**</u>. The petitioner, Iftikhar H. Shah, a native of Pakistan and citizen of Canada, seeks judicial review of a final order of removal issued by the Board of Immigration Appeals (BIA). The BIA upheld the Immigration Judge's (IJ) denial of Shah's motion to reopen his removal order, which was issued in absentia when he failed to appear for his scheduled hearing. Shah argues that he never received notice of his hearing before the IJ. Finding no basis for overturning the order, we deny the petition.

## I. Background

On or about June 2, 1991, Shah entered the United States as a non-immigrant F-1 student with authorization to remain in the United States for a temporary period not to exceed December 31, 1993.[1] Shah applied for asylum in July 1996 by filing an application with the Immigration and Naturalization Service (INS).[2] In support of his application, Shah claimed that he had suffered persecution in Pakistan because he had been associated with the

---

[1] The Notice to Appear (NTA) alleges that Shah entered the United States on or about June 2, 1991, while Shah's brief argues that he entered the United States on or about December 27, 1989. However, in his Request for Asylum, Shah indicated that he did not leave Pakistan until 1991. Because the date Shah entered the United States is not relevant to the legal issues before us and because Shah presents conflicting dates, we will accept the date of entry as alleged in the NTA for the purposes of this appeal.

[2] On March 1, 2003, the relevant functions of the INS were reorganized and transferred to the Department of Homeland Security (DHS).

Pakistan Peoples Party (PPP) and the Peoples Youth Organization (PYO). He described the persecution in his Request for Asylum and in testimony. Shah alleged that he had been expelled from the party, that arrest warrants had been issued against him, and that if he was returned to Pakistan he would be arrested, detained, or killed. Based upon these threats, Shah claimed he held a well-founded fear of future persecution.

On October 17, 2001, the DHS informed Shah that his case had been referred to an immigration judge because his testimony was deemed not credible due to internal inconsistencies and a lack of detail. On December 3, 2001, a NTA dated October 31, 2001, was sent by regular mail to the address that Shah had provided to his asylum officer, 59 Breckinridge St., Palmer, MA, 01069. The NTA charged that Shah had overstayed his visa and was subject to removal pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act (INA). The NTA required Shah to attend a hearing before an immigration judge on February 20, 2002. Shah failed to appear at the hearing. Accordingly, the IJ ordered Shah to be removed from the United States to Pakistan, in absentia.

In April 2006, Shah filed a motion to reopen his case on the basis that he had never received notice of the original hearing because his attorney had failed to inform him of the hearing date. Shah indicated that he was in Canada at the time the NTA was served. On August 25, 2006, the IJ denied the motion to reopen

based on the following findings: (1) the NTA had never been returned to the DHS as having been undelivered, (2) the removal order was mailed to the same address and that order was also never returned, and (3) Shah had been granted Canadian citizenship which made him ineligible for political asylum because he "firmly resettled in Canada." Shah timely appealed to the BIA.

The BIA affirmed the IJ's decision. It noted that Shah acknowledged that he had departed the United States for Canada during the pendency of his removal proceedings. Consequently, it found that he was barred from filing a motion to reopen based upon 8 C.F.R. § 1003.23(b)(1), which reads: "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." In the alternative, the BIA affirmed the IJ's decision because it found that Shah had failed to show that he did not receive notice of the hearing in accordance with section 239(a) of the INA, 8 U.S.C. § 1229(a)(1). The BIA considered Shah's new argument on appeal – that the NTA was addressed incorrectly – but it found that Shah had failed to submit any evidence that supported that assertion. Rather, all the evidence before the BIA, including the NTA, contained the proper address and was certified as having been sent by regular mail to Shah. Accordingly, the BIA dismissed the appeal. Shah petitions for review of the denial of the motion to reopen.

## II. Discussion

On appeal, Shah challenges the BIA's denial of the motion to reopen on the ground that he was outside the United States when the NTA was sent and that it should have been sent to his attorney. "Where, as here, 'the BIA adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and the BIA's opinions.'" Lin v. Gonzales, 503 F.3d 4, 6-7 (1st Cir. 2007) (quoting Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007)). We review the BIA's denial of the motion to reopen for abuse of discretion and will reverse "only if the BIA 'misread the law' or acted 'in an arbitrary or capricious fashion.'" Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (quoting Carter v. INS, 90 F.3d 14, 17 (1st Cir. 1996)). "We defer to the factual determinations made by the BIA if they are based on 'reasonable, substantial, and probative evidence.'" Aragon-Munoz v. Mukasey, 520 F.3d 82, 85 (1st Cir. 2008) (quoting Ymeri v. Ashcroft, 387 F.3d 12, 17 (1st Cir. 2004)).

Under 8 C.F.R. § 1003.34(b)(1), "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." See also Aguilar v. Gonzales, 475 F.3d 415, 418 (1st Cir. 2007) (holding that the petitioner's motion to reopen was withdrawn under 8 C.F.R. § 1003.23(b)(1) because the regulation is mandatory and the

- 5 -

petitioner had departed the United States after filing the motion to reopen). Shah departed the United States in June 2000 and filed a motion to open his prior deportation proceedings in July 2006. There is no question that at that time, he continued to reside in Canada. Shah is therefore barred from filing a motion to reopen under 8 C.F.R. § 1003.34(b)(1).

Additionally, there is substantial evidence to support the BIA's finding that Shah failed to meet his burden of demonstrating that he did not receive the NTA. "An alien's failure to appear at a scheduled immigration hearing results in mandatory entry of an in absentia removal order if the government establishes that written notice of the hearing was given and that the alien is removable as charged." Aragon-Munoz, 520 F.3d at 85. A NTA that is sent to the most recent address provided by the alien is sufficient written notice to satisfy 8 U.S.C. § 1229a(b)(5)(A)[3]. Id.; see also 8 U.S.C. § 1229(c) ("Service by mail under this section shall be

---

[3] The full text of this sections reads:

> Any alien who, after written notice required under paragraph (1) or (2) of section 239(a) has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 239(a)(1)(F).

8 U.S.C. § 1229a(b)(5)(A).

sufficient if there is proof of attempted delivery to the last address provided by the alien . . . .").  If the alien fails to provide the government with his most recent address, then notice is not required before the in absentia order may be issued.  Aragon-Munoz, 520 F.3d at 85.

In order to reopen his proceedings, Shah relies upon 8 U.S.C. § 1229a(b)(5)(C)(ii), which provides that an in absentia order can be rescinded at any time if the alien can demonstrate that he did not receive notice of the hearing.  The alien bears the burden of demonstrating that he did not receive the notice.  Id. at 86.

The BIA and the IJ found that Shah failed to meet his burden of demonstrating that he did not receive the NTA.  That conclusion was supported by more than substantial evidence.  Shah's original Request for Asylum listed a Brooklyn, New York address.  However, Shah made hand-written edits on the asylum application on December 1, 1999.  One of those edits was the replacement of the prior address entry with the following: 59 Breckinridge St., Palmer, MA, 01069.  Both the BIA and the IJ found that the NTA contained the proper address – 59 Breckinridge St. – and was certified to have been sent by regular mail to that address.  Further, as the IJ noted, the NTA was never returned to the DHS as having been undeliverable.  Additionally, we note that Shah has provided no affirmative evidence, other than his own vague assertions, of where he was located when the NTA was sent.  While he argues on appeal

that he was outside the United States and consequently all notices should have been sent to his attorney, he failed to submit any evidence that would indicate that he provided the Attorney General with a written record of the change in his address. See Aragon-Munoz, 520 F.3d at 86 (finding that the petitioner failed to demonstrate that notice was never received when he did not introduce any affirmative evidence of where he was living when the NTA was mailed). Accordingly, the BIA did not abuse its discretion in denying the motion to reopen.

### III. Conclusion

For the reasons discussed above, the petition is denied.